Final argument of the day is in Appeal No. 23-1108, the United States v. Hudson. Mr. Drysdale, good afternoon. Thank you, and may it please the Court, Tom Drysdale, and I'm here today on behalf of the defendant-appellant, Javares Hudson. Mr. Hudson was the victim of a shooting on January 23, 2022, while receiving medical treatment at a local hospital. A search of Mr. Hudson's mouth revealed a piece of a firearm known as a Glock switch. The question before the Court today is whether law enforcement officials provided such significant encouragement that the search must be deemed governmental action. And I think at the outset, there's two important things I want to know. First, there does not have to be an express directive by the police to the private party to conduct the search. And two, even if there is some kind of independent motive from the private party, that alone does not insulate the search if the government provided significant encouragement. But here's my issue with this. I understand that the gunshot wound was in his backside and that the whatever it was, they didn't know at first, was in his mouth. But the doctors treating him figure out pretty quickly that he does have something in his mouth. And you seem to think, well, they should have been utterly indifferent to that because they were just trying to treat the gunshot wound. But they don't come across, you know, in the video or anything, as indifferent. If it had been, for example, a baggie with cocaine in it, people die of that when they pick open the bag from chewing on it and ingest too much cocaine. People could be hurt. So it seems to me their repeated efforts to get him to spit out whatever it was they didn't know were medically driven decisions, not because Officer Smith is standing there hanging out at the door of the treatment room. Well, Your Honor, a few points there. I think that there is some questionable medical purpose here in the sense of they, of course, do seem to want him to spit it out. And there is a statement by the physician at some point of he might get sick. Well, keeping him stabilized, I mean, it's practically a matter of lay knowledge. Unfortunately, today's world, swallow too many drugs, you're going to hurt yourself. Right. And I think our point to that is Mr. Hudson is very clearly awake, alert, making his own decisions, and actually trying to make the decision to not take that medical treatment. And that's where the district court, I think, goes awry a little bit here in saying that his right to refuse... Not take what medical treatment? The spitting it out? The advice of the medical professionals to spit the object out of his mouth. He's saying no. But the medical personnel tell him it's more than just to be treated, you have to spit this out because we're concerned it might be drugs. They're saying, we are treating your gunshot wound. We may have to intubate you, we might have to do other things, and you could choke on this, which prevents us from treating you for your gunshot wound. Your Honor, I think what's happening here is they say, spit it out, or we're not going to treat you. I think that that happens. And then what Mr. Hudson... Before the officer is involved at all, you hear them start to tell him, spit it out, spit it out, spit it out. And then what happens is he says, no. I don't remember they're threatening not to treat him anymore if he won't spit it out. They're trying to explain to him that this could be a serious problem. Right now, it's not a serious problem because it's still in the baggie and so on. But even by the time he spits it out, it's all kind of bloody and a mess. And I think I misstated it briefly. The threat not to treat him actually comes from the police. The police, Officer Smith busts into the room and says, if you don't spit that out, those doctors are not going to treat you. That's exactly what he says. Don't you think in the context, though, it's like, look, they can't help you if you don't help them. And the worry, of course, is that he's going to ingest a whole bunch of drugs, right? He, of course, knows he doesn't have drugs in his mouth. And so he refuses. He refuses to spit it out. Swallowing a piece of a Glock may not be the healthiest thing to do, either, it seems to me. I can't imagine it could have been a lot worse. But, you know, I think the fact of the matter is, is he does refuse to spit it out. And at that point, the police or the physician then goes to the police. And I think our big point here is that's when there's clearly an evidence collection going on here. The doctor goes straight to the officer and says. Why is it evidence collection when Smith, I mean, I think this is a little weird that Smith keeps saying this, but Smith keeps saying he doesn't care what's in the bag. If it's drugs, he's just going to smoosh it on the floor, he says. And I think that point actually cuts in our favor. I think that Smith doesn't particularly care that if he's involved in a search or that if a search is going on, because he just wants to get this process going so he can do his test and get out of there, which is why I don't think he's terribly concerned with getting a search warrant and conducting a search that he ultimately admits that at least he believes he directed. Doesn't he say he's not going to charge him for drugs? He does. Which is why I think it which is why I think he's not concerned with complying with the Fourth Amendment in searching. Why don't we read that as he's not thinking that he's doing a search at all. He's trying to let the medical people do their thing. He wants his gunshot residue test. He's kind of hanging out there waiting for that. But otherwise, you know, they make jokes about whether it's weed or whether it's other things in the bag, but he doesn't really seem to be an officer conducting an investigation of some type. Well, I think, again, when the physician specifically comes to him and says, look, I think the exact quote is I told him everything on him as part of a crime scene and he's not cooperating. Do you have any ways to convince him? And Smith says, basically, use my authority. Tell him he's not free to leave. And the physician says, perfect. And that's when then you start hearing the medical professionals yelling at Mr. Hudson, saying the cops are not going to leave unless you spit it out. The cops are coming to get you if you don't comply with this directive. Did he really say, tell him, use my authority, tell him he's not free to leave? Yeah, I think you're putting a spin on that. He does say tell him he's not free to leave. Well, he says at that point, or is he detained, and he says, yes, he's detained, he's not free to leave. Correct. That's the quote. He's detained. He's not free to leave. And the physician says, perfect, and goes back and tells Mr. Hudson. But I don't think the officer directs the physician to tell him that. He says, he's detained. Is there any ways you have to convince him? That's the question posed to Officer Smith. And in response, he says, he's detained. He's not free to leave. He's answering the question. And then the physician then goes back and uses that authority as a basis to try to get Mr. Hudson to spit the object out of his mouth. And I think that's the- But is he doing it at Officer Smith's request? Officer Smith seems to have a single purpose this whole time, which is to get his gunshot residue. And he even makes that comment, of course, at the end that you highlight in your brief. I'm not sure that this can be used. You were my agent. But then he backs off, and he says, well, maybe we'll have to ask the legal people, or some words to that effect. I think, to answer Your Honor's question, there's not a specific request from Officer Smith. Right. And so then, on the implicit side, don't we have also fact-finding by the district court judge? You know, what to make of this series of events as they unfold? And I don't think there are a lot of factual disputes in this case because most of it happens to be on camera, whether it be video or audio. And so I think what we're disputing is how those facts apply. And we, I think, clearly have a situation here where, at some point, the physician basically says, I'm not going to be able to get this done for medical purposes. Let's see if I can get this done for evidence collection purposes in conjunction with the police. And I think that's the main point we're trying to articulate here. And if there's no other questions, I'd like to save some time for rebuttal. Yeah, absolutely. Very well.  Mr. Kinestro, go right ahead. May I please the court? Good afternoon, Your Honors. Jeff Kinestro, excuse me, on behalf of the United States. There is an obvious medical purpose, as Your Honors have already recognized, in ensuring that a shooting victim doesn't have a foreign object in his mouth that could either obstruct his breathing or cause him to overdose on whatever substances may be inside that object. The defendant's refusal to spit that object out doesn't mean that those medical purposes go away, such that, at that point, the medical provider shifts their purpose elsewhere. It's exactly the opposite. As long as that object is in the defendant's mouth, the risk of overdose and the risk of choking remain in full effect. And so, as the video shows, the medical personnel, throughout the encounter, remained focused on those medical interests and ensuring that the defendant did not become sick from whatever was in his mouth, that he didn't choke and that he didn't overdose. The fact that the medical personnel did have that independent medical purpose is itself dispositive when it comes to agency. The cases that the defendant relies on in the contrary, especially in their reply brief, cases like Korngold and Byers and Lustig, where they're referring to the private party's independent motivation, that's language talking about joint participation. So in those cases, the government actors engaged in actually conducting the search, side-by-side with the private parties. And so, sensibly enough, those cases recognize that the fact that the private parties are engaging in the same conduct for their purposes doesn't insulate the officer from their actual conduct in actually opening the parcels in some of their cases, or actually entering the areas to be searched and selecting what evidence to select, or identifying what evidence to collect. But when it comes to agency, the party's independent motivation is dispositive. It shows that they're not acting on behalf of the officer, they're instead acting on their own behalf to pursue their own ends. And as the Ninth Circuit decision in Cleveland, which the defendant relies on, that case acknowledges that when it comes to agency, the party's independent motivation is dispositive. And this court has repeatedly recognized that as well in cases like Shaheed and others. So that just takes the Fourth Amendment out of the picture from the get-go, then, if we were to adopt that viewpoint. We wouldn't have to worry about destruction of evidence, we wouldn't have to worry about inevitable discovery, we wouldn't have to worry about all the rest of those doctrines. Some of which are a better fit for these facts than others. That's correct. The parties, or the medical provider's independent motivation is as self-dispositive as the agency, which then is dispositive as to the motion to suppress. Whether it was state action doing the search at all, yeah. The other side... Are you taking the position that we're evaluating this de novo, or do we owe any deference to Judge Shadid's read of the video and the rest of the evidence? This court's review is only for clear error, it is not de novo. The district court did make factual findings on page five. And even after Scott versus Harris, where we can just look at the video? So I take your point there, the video shows what the exchange was, but what inferences to draw from that video as to what the parties intended, if something was implied or expressed, those sorts of inferences are our factual findings that this court would owe deference. And the court did make those factual findings. On page five to six of its order, it said that there was no inducement here. That factual finding certainly wasn't clearly erroneous. It also made a factual finding as to the medical personnel's intent that at all times they were pursuing their independent medical purpose. What about the ultimate determination that he wasn't acting as a government's agent? What standard do we review that under? I believe that would be de novo after taking the factual findings as granted, assuming that they're not clearly erroneous. There seems to be a little bit of inconsistency if that's de novo or abuse of discretion, that ultimate determination. That may be. I'm not sure exactly what Your Honor is referring to there, but typically the standard review that's going to apply in motions like this is the legal conclusions are reviewed de novo, but any of the underlying facts are reviewed for clear error. And so that's the standard review that we've argued for here. The defendant makes much here today and in the brief as well about the medical personnel using the police presence to further their private purpose. And I think that's a fair characterization. They are using the police presence to further their private purpose of getting the defendant to spit out the object. But in that respect, that's really no different from cases like Shaheed with the mall security guards, where in those cases, the private actors absolutely use the police presence to further their private purpose. Their private purpose in that case is to deter shoplifting and to hold shoplifters accountable. And they do that in part by calling the police and getting the police to come and arrest the people while they're in their custody. And so those cases really wouldn't be any different if the officer or the security guards in those cases said to the person, which they very well might have, something like, I've already called the police, they're on your way, they're going to arrest you when you get here, so don't get any ideas about trying to leave or anything like that. And so in that circumstance, the private party has used the police to further their independent purpose, but because they are still seeking their own independent purpose and that sufficiently motivates their conduct, they're not acting as an agent. And so their conduct isn't attributable to the police. So that's your response to Mr. Drysdale's point about the pressure or the intensity of this kind of ratcheted up when Officer Smith told the physician that, yeah, he's not free to leave, he's detained, and then went back into the treatment room and they leaned on Hudson a little bit more to spit that out. Exactly right. So at that point, the officer could be responsible for his own response. For example, if the defendant had argued that at that point it became an unlawful seizure and that the officer is responsible for conveying that the defendant was detained, that's not a theory that he's made in this case and it wouldn't succeed. But the fact that at that point that the doctor is using the officer's presence to further his own independent medical purpose does not make the doctor an agent. You think it's factually relevant. One thing that stood out to me is that at all points in time, Smith remains outside the room. Now, there's no question that he's saying things and commenting and nobody's arguing that Hudson is outside of earshot or something like that. But maybe this is different if in that last encounter, Smith hauls into the room and right next to the treatment center says, look, or treatment table says, I've had it. The thing out of your mouth right now. Nothing like that happened. That's correct. It didn't happen. So he stays back a little bit the whole time and the people that are directly interacting with him are the medical team. That's exactly right. And so the officer is outside the treatment room. Once the doctor closes the curtain in his face, he's outside of the defendant's view. The doctor or the officer never suggests to the medical personnel that they should do it. Doesn't suggest any reward or benefit or any detriment for not acting. So really the officer stayed out of the way. The one thing that he did ask for was to be able to perform a gunshot residue test at the appropriate time. But he made equally clear there that he wasn't asking them to work on his behalf. He was going to stay out of their way, that they should do their thing first. And all he wanted was, when it wouldn't be in their way, that he would perform his own test on his own behalf. And that seemed to be his overarching purpose, right? Yeah, he mentions it repeatedly. Didn't it start with a bar shooting or a restaurant shooting or something? Yeah, there was a shooting outside of a nightclub in Wilmington. Yeah, about two in the morning. I'm happy to answer any questions Your Honors may have on the emergency aid exception or the evidence destruction issue. Otherwise, we'd rest on our briefs on those and ask this court to affirm. Okay, very well. Mr. Dreisdell, I know you had some time left. Just briefly, Judge Sania, to answer your question, I think the ultimate question is in deep review de novo. I think Baybris settled that for the most part. I know there was some confusion in the law prior to that, but I think that's the most recent opinion that settles that. Baybris? Yes. Your Honors, I want to make it clear. To the best of my knowledge, this court has never held in any of the cases that the government cites in their brief that the Fourth Amendment just simply goes away regardless of the police involvement, just because there is some type of independent motive. All the cases they cite in their brief, Shaheed, Koenig, Ginglin, Crowley, not a single one of those cases involves the police being present while the search was taking place. None of them involve that. They do not involve the private party kind of bouncing back and forth and consulting with the police in the middle of an ongoing search. So, all of those cases fail for that particular reason. And, Judge Scudder, just briefly to your point, I'm not sure that I agree that at all points in time, Officer Smith stayed outside of the room. As soon as something was discovered in Mr. Hudson's mouth, that is when Officer Smith went back in the room after already being dismissed one time, reasserted his authority and started yelling at Mr. Hudson. So, he was indeed back in the room after it was determined that something was in his mouth. Yeah, I mean, I think your point, Mr. Dreisdell, is a fair one about the more kind of interactive, the back and forth, and that's what makes this, that's what distinguishes this case from, you know, others that have come before, and we'll have to sort it out. And that's precisely right, Your Honor, and that is where we would assert that there is government action in this case. Thank you, Your Honors. You're quite welcome, Mr. Canestra. Thanks to you. We'll take that appeal under advisement and the court will be in recess.